UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-62527-SINGHAL/VALLE

CARL SHELL, SR.,

       Plaintiff,

v.

KILOLO KIJAKAZI,[1]
Acting Commissioner of
Social Security Administration,

       Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff's Motion for Summary Judgment (ECF No. 20), Defendant's Motion for Summary Judgment (ECF No. 21) (together, "the Motions"). U.S. District Judge Raag Singhal has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 4).

After due consideration of the record and the parties' briefs, including Defendant's Response (ECF No. 22), Plaintiff's Reply (ECF No. 23), and being otherwise fully advised on the matter, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's Decision ("ALJ's Decision") be **AFFIRMED** for the reasons set forth below.

---

[1] Kilolo Kijakazi has been appointed Acting Commissioner of the Social Security Administration. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

## I.     PROCEDURAL HISTORY

On September 25, 2018, Plaintiff applied for supplemental security income ("SSI" ) under the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging disability beginning on September 9, 2018.   (R. 292).[2]   Plaintiff's application was denied initially and again upon reconsideration.  (R. 143, 159).  Thereafter, Plaintiff requested a hearing, which was initially held on January 28, 2020, before ALJ Rossana L. D'Alessio.  (R. 76-136).  Plaintiff then requested a supplemental hearing before the ALJ, which was held on July 29, 2020.  (R. 42-70).  At both the initial and supplemental hearings, Plaintiff appeared without counsel and testified.  (R. 44-48, 83-106).  A Vocational Expert ("VE") also testified at each hearing.  (R. 48-68, 106-118).  On August 26, 2020, the ALJ issued a decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act.  (R. 24, 34).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision."  (R. 1-5); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision.  (ECF No. 1); *see also* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.     STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also*

---

[2] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer.  *See* (ECF Nos. 16, 17).

42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), *abrogated on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 1382 (standard for SSI). A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

> (1)     Is the person presently unemployed?
> (2)     Is the person's impairment severe?
> (3)     Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
> (4)     Is the person unable to perform his or her former occupation?
> (5)     Is the person unable to perform any other work within the economy?

20 C.F.R. § 416.920(a)(4) (evaluation for SSI).  An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability.  *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  A negative answer to any question, other than Step 3, leads to a determination of "not disabled."  *Id.*

Importantly, the burden of proof rests on the claimant through Step 4.  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004)*, abrogated on other grounds by Jones v. Soc. Sec. Admin., Comm'r*, No. 22-10507, 2022 WL 3448090 (11th Cir. Aug. 17, 2022).  At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to his  past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  The regulations define RFC as that which an individual is still able to do despite the limitations caused by his impairments.  20 C.F.R. § 416.945(a).  The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case.  20 C.F.R. § 416.920(e).  The RFC assessment is used to determine whether the claimant can return to his past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled."  *Phillips*, 357 F.3d at 1238 (citations omitted).  If a claimant cannot return to his past relevant work, then the ALJ proceeds to Step 5.  *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine   whether   the   claimant   "can   make   an   adjustment   to   other   work."  20 C.F.R. § 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239.  The ALJ must determine if there is other

work available in significant numbers in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239.  If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled.  *Id.*  Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.  *Id.*  The ALJ may determine whether the claimant is able to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2) (the "Grids"); or (2) using a VE, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy.  *Id.* at 1239-40.

### III.   THE ALJ'S DECISION

On August 26, 2020, after reviewing the evidence and conducting the sequential analysis, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the  [Act], since September 25, 2018, the date the application was filed."[3]  (R. 24, 34).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 25, 2018, the application date.  (R. 26).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: right shoulder osteoarthritis; osteoarthritis of the cervical, lumbar, and thoracic spine; cataract of left eye; and sinusitis.  *Id*.

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any one of the Listings.  (R. 27).

At Step 4, the ALJ determined that Plaintiff has the RFC to lift and/or carry 50 pounds occasionally and 25 pounds frequently and stand/walk/sit for 6 hours in an 8-hour workday.  *Id.*

---

[3] Although Plaintiff claimed an alleged onset date of September 9, 2018, the ALJ mistakenly references the application date in her Decision. (R. 23, 26).  This error, however, is immaterial to the ALJ's Decision or the undersigned's determination.

Plaintiff: (i) can never climb ladders, ropes, or scaffolds; (ii) can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; (iii) can have occasional near acuity; (iv) needs to avoid concentrated exposure to pulmonary irritants and hazards; and (v) can occasionally reach above his shoulder with his right arm. *Id*.

In reaching this conclusion at Step 4, the ALJ considered Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. *Id*. Although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (R. 28). The ALJ determined that Plaintiff could not perform his past work, and proceeded to Step 5 of the sequential evaluation. (R. 31-33).

At Step 5, based on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as dining room attendant, sandwich maker, and linen room attendant, all unskilled jobs with a medium exertional level.[4] (R. 32-33). Accordingly, the ALJ concluded that Plaintiff was not disabled. (R. 33-34).

---

[4] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. § 416.967.

## IV.   DISCUSSION

Plaintiff argues that the ALJ committed several errors.[5]   First, Plaintiff challenges the ALJ's RFC assessment on several grounds, including: (i) Plaintiff's purported inability to work on a regular and continuing basis; (ii) Plaintiff's alleged need for frequent breaks; and (iii)) the ALJ's reliance on consultant reports that Plaintiff alleges are unsigned/unverified.  (ECF Nos. 20 at 1-3, 23 at 1-4).  Plaintiff also alleges that the ALJ failed to consider the medical opinion of ARNP Unnamma Udaya Thomas and did not allow Plaintiff to subpoena and cross-examine the doctors who submitted medical reports.  (ECF Nos. 20 at 4-5, 23 at 5-6).  Lastly, Plaintiff argues that the ALJ erred because Plaintiff should have been found disabled upon application of the Grids. (ECF Nos. 20 at 5-7, 23 at 8).  As discussed below, the undersigned finds that the ALJ applied the proper legal standards and that the ALJ's Decision is supported by substantial evidence. Accordingly, the ALJ's Decision should be affirmed.

### A.   Substantial Evidence Supports the ALJ's RFC Assessment

A claimant's RFC is the most a claimant can do despite the limitations caused by his impairments.  20 C.F.R. § 416.945(a)(1); *Phillips*, 357 F.3d at 1238.  The RFC is based on all the

---

[5] Relatedly, Plaintiff has proceeded without counsel through the administrative process and before this Court.  Although pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys, pro se litigants must still comply with basic procedural rules. *Dish Network L.L.C. v. Kushner*, No. 14-CV-60644, 2014 WL 12589141, at *1 (S.D. Fla. Dec. 2, 2014) (citations omitted).  Thus, while briefs filed by pro se litigants are read liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned. *Handy v. Cook*, 476 F. App'x 844, 844 (11th Cir. 2012) (citation omitted).  Here, Plaintiff alleges several errors, but fails to present corresponding supporting argument. *See generally,* (ECF Nos. 20, 23).  Accordingly, Plaintiff's Motion is procedurally deficient and can be denied on that basis alone. *See, e.g., Handy*, 476 F. App'x at 844 (affirming district court grant of summary judgment in favor of defendant where pro se plaintiff abandoned issues on appeal).  Nevertheless, the Court will determine if substantial evidence supports the ALJ's denial of disability benefits.  Therefore, the undersigned liberally construes the issues raised in Plaintiff's Motion to determine whether Plaintiff is entitled to summary judgment.

relevant evidence in the record and is used at Step 4 of the sequential evaluation process to decide if a claimant can do his past relevant work; and, if necessary, at Step 5 to decide if a claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.945(a)(5)(i)-(ii).  Social Security regulations classify the physical exertion requirements for work as sedentary, light, medium, heavy, and very heavy.  *See* 20 C.F.R. § 416.967.  Along with age, education, and work experience, the ALJ considers a claimant's RFC in determining whether the claimant can work.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citation omitted). In the end, the responsibility for determining a claimant's RFC rests with the ALJ, and the ALJ is not required to give any special significance to the opinion of medical sources in determining the RFC.  *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015) (upholding ALJ's RFC finding that accounted for medical opinions not specifically discussed by the ALJ).

1.  *Work on a Regular and Continuing Basis – Alleged Need for Frequent Breaks*

Plaintiff relies on Social Security Regulation ("SSR") 96-8p to argue that the ALJ's RFC assessment is deficient because the ALJ omitted reference to whether Plaintiff could work on a regular and continuing basis or sustain a 40-hour work week.  *See* (ECF No. 20 at 1-2).  Plaintiff further argues that the ALJ did not address Plaintiff's alleged need for frequent breaks.  *Id.* at 2. In relevant part, SSR 96-8p provides that:

> Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

SSR 96-8p, 1996 WL 374184, at *1.

Here, in determining Plaintiff's RFC, the ALJ concluded that Plaintiff could stand/walk/sit for 6 hours in an 8-hour workday.  (R. 27).  Plaintiff argues that the ALJ failed to consider Plaintiff's testimony during the administrative hearing that Plaintiff needed frequent breaks.

(ECF No. 20 at 3). Plaintiff's argument, however, is unpersuasive and the ALJ considered and properly evaluated Plaintiff's testimony. The ALJ wrote:

> [Plaintiff's] statements about the intensity, persistence, and limiting effects of his symptoms [are] inconsistent because they are not supported by objective diagnostic studies or clinical findings . . . . A CT scan of the claimant's cervical spine dated September 9, 2018 indicated no acute cervical spine [sic], but there was mild multilevel degenerative changes resulting in varying degrees of neural foraminal narrowing (Ex. 1F/10). X-ray of the claimant's right shoulder dated September 9, 2018 indicated no acute fracture or dislocation, but there was mild marginal sclerosis involving the right humeral head suggesting mild degenerative joint disease (Ex. 1F/5). The claimant was prescribed Naproxen and Oxycodone and discharged in a stable manner the same day (Ex. 2F/17). While these diagnostic studies support the presence of a spine disorder and right shoulder osteoarthritis, they do not support the severity alleged by the claimant . . . .[T]reatment has been essentially routine and/or conservative in nature.

> * * *

> [P]hysical examinations have been generally unremarkable. For example, following a December 10, 2018 consultative evaluation performed by Dr. [Aurora] Luna, [the doctor] noted the claimant having the ability to perform activities involving sitting, standing, walking, lifting, and carrying/handling objects (Ex. 5F). A musculoskeletal examination dated June 26, 2019 indicated no edema, pain, or spasm (Ex. 19F/14). The claimant had lumbar tenderness, but he had normal range of motion (Ex. 19F/14). A neurological examination indicated that the claimant has normal strength and normal straight leg raise test (Ex. 19F/14). The claimant's gait was normal (Ex. 19F/14). Similarly, a musculoskeletal examination dated August 26, 2019 indicated normal range of motion and there was no edema or tenderness (Ex. 19F/29). The claimant's gait was normal (Ex. 19F/29).

> * * *

> [C]laimant wanted to continue with conservative treatment including over-the-counter medications for pain management. The claimant's willingness to proceed with only conservative treatment contradicts his subjective allegations regarding the extent of his functional limitations.

> * * *

> [Plaintiff's sinus symptoms] are controlled with medication. For example, treatment notes dated May 3, 2019 indicated that the claimant's sinusitis was controlled (Ex. 19/5)[.]

> Finally, the medical evidence also supports cataract in the left eye . . . . that did not interfere with claimant's vision (Ex.12F/4).

(R. 28-30); *see also* (R. 30) (referencing Plaintiff's reporting to Dr. Luna that claimant had worked, but could only stand for 30 minutes before needing a break).

Relevant here, in considering Plaintiff's symptoms, the ALJ must follow a two-step process: "Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms." *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 703 (11th Cir. 2018) (citing SSR 16-3p). "Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit [his] ability to perform work-related activities." *Id*. An ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [claimant's] history, the signs and laboratory findings, and statements by [the claimant's] medical sources or other persons about how [his] symptoms affect [him]. [A claimant's] symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence." 20 C.F.R. § 416.929(c)(4). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Whitmore v. Soc. Sec. Admin., Comm'r*, 855 F. App'x 641, 643 (11th Cir. 2021) (citation omitted). "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Id*. Nonetheless, courts will not disturb a clearly articulated finding about subjective complaints that is "supported by substantial evidence." *Id*. (citation omitted); *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *7 (11th Cir. Jan. 10, 2022) (same).

Here, the ALJ concluded that:

> [T]he claimant's work activity after the allege[d] onset date and his daily activities further support the [RFC]. For example, the claimant reported to Dr. Luna that he had the ability to perform the following activities independently: feeding, using public transportation, performing personal hygiene, cooking, managing funds, buttoning and unbuttoning shirts and pants (Ex. 5F/3). Finally, it is noted that the claimant has continued to work after the alleged onset date. Treatment notes dated August 1, 2019 indicated that the claimant was out in the sun working all the time (Ex. 19F/33). At the hearing, the claimant testified that he worked as a car detailer earning approximately $600/month. The fact that the claimant's impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work at the [RFC].

(R. 31).

Against this backdrop, the undersigned finds that the ALJ properly considered Plaintiff's testimony regarding the intensity of his symptoms and substantial evidence supports the ALJ's RFC determination, which implicitly includes that Plaintiff can work on a regular and continuing basis, with no demonstrated need for frequent breaks. *See, e.g., Rye v. Comm'r of Soc. Sec Admin.*, 270 F. App'x 938, 939 (11th Cir. 2008) (concluding that ALJ's RFC finding that claimant could sit for "at least" four to six hours, and stand and walk in fifteen-minute increments for "at least" two hours in a workday, supported the conclusion that claimant can work on a regular and continuing basis); *J.P v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-12, 2021 WL 1894146, at *3 (M.D. Ga. Mar. 19, 2021) (noting it is "well settled" that reviewing courts generally assume that administrative RFC assessments include implicit findings of ability to work on a regular and continuing basis) (quotations omitted). Here, the ALJ's Decision reflects the ALJ's implicit finding that Plaintiff can work on a regular and continuing basis.

Moreover, contrary to Plaintiff's argument, the ALJ need not rely on any medical opinion to decide Plaintiff's RFC.[6]  *See, e.g.*,  *Summerville v. Colvin*, No. 12-CV-1796-RDP, 2014 WL 3057397, at *8 (N.D. Ala. July 7, 2014) ("[A] doctor's opinion was not required for the ALJ to assess [claimant's] RFC"); *Cooper v. Astrue*, 373 F. App' x 961, 962 (11th Cir. 2010) ("The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor"); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007) (rejecting argument that ALJ could not determine RFC without a supporting medical source opinion and holding ALJ could rely on other evidence to support the RFC assessment).

Lastly, while the ALJ may not have referred to every piece of evidence that he used to formulate the RFC, her Decision is nevertheless sufficient to allow this Court to conclude that the ALJ considered the claimant's impairments as a whole and that substantial evidence supported her RFC assessment.  *See, e.g.*, *Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 882 (11th Cir. 2019); *Herron v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 781, 787 (11th Cir. 2016) ("The ALJ's RFC assessment was not required to account for every piece of evidence.") (citation omitted).

---

[6] Although not required to do so in determining Plaintiff's RFC, the ALJ considered the medical opinions of Drs. Luna (a consultative medical examiner who evaluated Plaintiff in December 2018), Jennifer Goldman (who evaluated Plaintiff in December 2019), and the State Agency consultants. *See* (R. 30-31).  Regarding Dr. Luna, the ALJ concluded that the doctor's opinion was "persuasive because it was well supported by medically acceptable clinical findings and laboratory diagnostic techniques." (R. 30).  Similarly, the ALJ considered Dr. Goldman's opinion that Plaintiff has "allergies to dust and pollen and should avoid working in an environment high in dust and pollen" and found it persuasive. (R. 31, 729).  Accordingly, the ALJ limited Plaintiff's RFC to avoiding concentrated exposure to pulmonary irritants. (R. 27, 31).  Lastly, the ALJ considered the opinion of the State Agency consultants and found them well supported by the evidence. (R. 31); *see also* 20 C.F.R. § 416.913a(b)(1) (providing that   State Agency consultants are highly qualified specialists who are also experts in the Social Security disability evaluation).  Therefore, the ALJ's fulsome evaluation of the medical opinions in the record belies Plaintiff's argument on this issue.

*2.   Medical Opinion Signatures and Development of Record*

Plaintiff next complains of purported procedural errors in the ALJ's Decision, including:

(i) the ALJ's reliance on allegedly unsigned/unverified reports from medical consultants; (ii) the

ALJ's alleged failure to supplement the record by not obtaining the medical records of ARPN

Thomas; and (iii) the ALJ's purported error in not permitting Plaintiff to subpoena/cross examine

certain doctors.  (ECF Nos. 20 at 3-5, 23 at 4-6).  Upon review of the ALJ's Decision and the

record in this case, the undersigned finds Plaintiff's arguments without merit.

First, the opinions of the State Agency consultants and consultative examiner are

electronically signed, which is an approved method of signing medical assessments.  (R. 151, 154,

156, 173, 175); *see also* 20 C.F.R. § 416.919n(e) (requiring signature by medical source who

actually performed the examination); Program Operations Manual System (POMS) DI 24501.002

(noting that electronic signature on medical assessment form from a MC/PC is acceptable).

Furthermore, although the ALJ left the record open for seven days for Plaintiff to submit

Nurse Thomas' opinion, Plaintiff never did.  (ECF No. 21 at 13).  Nonetheless, the Appeals

Council considered the opinion of Nurse Thomas, who summarily opined that Plaintiff was

"unable to lift more than 15lbs without causing more pain and worsening his current conditions."

(R. 19, 72).  After reviewing Plaintiff's objections to the ALJ's Decision, the Appeals Council

denied Plaintiff's appeal, concluding that "the reasons do not provide for changing the [ALJ's]

decision."[7]  (R. 1).  There is no rigid requirement that the ALJ specifically refer to every piece of

---

[7] Further detracting from Nurse Thomas' opinion is the lack of evidence in the medical record to
support such a limitation.  Indeed, the persuasiveness of any medical source's opinion (whether
treating, examining, or reviewer) depends on whether the opinion is: (i) supported by objective
medical evidence and the source's explanation of her opinion; and (ii) consistent with other
evidence in the medical record.  20 C.F.R. § 416.920c(c)(1)-(2).  These factors, referred to as
"supportability" and "consistency," are the "most important factors" in the ALJ's analysis.
20 C.F.R. § 416.920c(b)(2); *Matos*, 2022 WL 97144, at *4; *Bonilla v. Saul,* No. 19-CV-25323,

evidence in her Decision, as long as the ALJ's Decision is not a broad rejection of the evidence. *Cates v. Comm'r of Soc. Sec.*, 752 F. App'x 917, 921 (11th Cir. 2018) (citations and quotations omitted). Accordingly, this argument lacks merit.

The undersigned is similarly unpersuaded by Plaintiff's argument that the ALJ erred in not subpoenaing the doctors who submitted medical opinions. (ECF No. 20 at 4-5). Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Although the ALJ's duty is greater when a claimant appears without counsel, a claimant must still show prejudice before a court can find that his due process rights have been violated to such a degree that the case must be remanded to the Commissioner for further development of the record. *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997); *Moye v. Saul,* No. 19-CV-60332, 2020 WL 1433280, at *9 (S.D. Fla. Mar. 24, 2020) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)). Ultimately, the claimant bears the burden of proving that he is disabled and is responsible for producing evidence in support of his claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 20 C.F.R. § 416.912(a)(1) (a claimant must furnish medical and other evidence that the Commissioner can use to reach conclusions about his medical impairment(s)); 20 C.F.R. § 416.912(a)(2) (a claimant must provide medical evidence showing that he has an impairment(s) and how severe they are). In evaluating whether a case should be remanded for an ALJ's purported failure to fully develop the record, courts consider whether there are evidentiary gaps in the record that result in unfairness or "clear prejudice" to the claimant. *Brown*, 44 F.3d at 935; *see also Graham*, 129 F.3d at 1423. Here, Plaintiff has not demonstrated that cross-

---

2020 WL 9048787, at *4 (S.D. Fla. Oct. 23, 2020), *report and recommendation adopted*, 2021 WL 1198296 (S.D. Fla. Mar. 30, 2021). Nurse Thomas' opinion fails on both counts.

examination of the State Agency medical consultants or subpoenaing other doctors could have altered the ALJ's Decision.  Nor has Plaintiff shown that the ALJ abused her discretion. Accordingly, Plaintiff has not shown prejudice and his request to cross-examine or subpoena other doctors is meritless.

### B.  The Grids are Inapplicable

Read liberally, Plaintiff next argues that he should be found disabled under the Grids. (ECF Nos. 20 at 5-7, 23 at 8-9).  In relevant part, when a claimant's RFC and other vocational characteristics coincide with the Grids, the existence of jobs in the national economy may be established using the Grids.  *See also* 20 C.F.R. § 416.969 (if the findings of fact made about all factors are the same as the Grids, the ALJ  uses the Grids to decide whether a person is disabled); *see also* 20 C.F.R. § 416.969a (listing exertional and nonexertional limitations); *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983) (the ALJ could reasonably rely on the Grids in appropriate cases rather than on the testimony of a VE); *Phillips*, 357 F.3d at 1239-40, 1242-43.

Here, at Step 5 of the sequential analysis and based on the record, the ALJ concluded that at the time of his application for disability benefits, Plaintiff was 53 years old, had limited education, and unskilled past relevant work.  (R. 32).  Rather than using the Grids, the ALJ asked the VE whether jobs exist in the national economy for an individual with claimant's age, education, work experience, and RFC.  *Id.*  The VE testified that other work exists, such as dining room attendant (with approximately 100,000 jobs), sandwich maker (with approximately 51,000 jobs), and linen room attendant (with approximately 44,000 jobs), all unskilled jobs, with a medium exertional level.  (R. 32-33, 109-10).

In referencing the Grids, Plaintiff asserts the ALJ failed to consider whether Plaintiff would fall under an older age category for purposes of applying the Grids.  (ECF No. 20 at 5-6).  Here,

Plaintiff applied for disability on September 25, 2018, at the age of 53.  (R. 23, 33).  During the administrative hearing, Plaintiff requested that the ALJ consider his age and apply the Grids in her decision.  (R. 68-69).  The ALJ subsequently issued her Decision on August 26, 2020, when Plaintiff was 54.  (R. 23, 33, 34).  Plaintiff turned 55 approximately one month after the ALJ's Decision, which would categorize Plaintiff as a person of advanced age had the ALJ used the Grids in her disability determination.[9]  Plaintiff's argument, however, misses the mark.

Reliance on the Grids is not appropriate either when claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills.  *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987) (citation omitted); *see also Watson v. Astrue*, 376 F. App'x 953, 956 (11th Cir. 2010) (noting that exclusive reliance on the Grids is inappropriate when a claimant's limitations do not coincide with a particular exertional level).  Here, the ALJ found that Plaintiff's "ability to perform all or substantially all of the requirements of [the RFC] has been impeded by additional limitations." (R. 32).  Therefore, the Grids are inapplicable and the ALJ did not err in relying on the VE's testimony at Step 5 of the sequential evaluation.  Accordingly, the ALJ's Decision should be affirmed.

## V.      RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 20) be **DENIED**, that Defendant's Motion

---

[9] A "younger person" is under age 50; a "person approaching advanced age" falls within the bracket of 50 to 54 years of age; and a "person of advanced age" is age 55 or older. 20 C.F.R. § 416.963(c)-(e); *see also Overstreet v. Astrue*, No. 11-CV-1238-VEH, 2012 WL 1946719, at *3 (N.D. Ala. May 29, 2012) (noting that ALJs will not apply the age categories mechanically in a borderline situation where claimant is within a few days to a few months of reaching an older age category, and using the older age category would result in a determination that claimant is disabled).

for Summary Judgment (ECF No. 21) be **GRANTED**, and that the ALJ's Decision be **AFFIRMED**;

Within **seven (7) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2022); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida, on September 5, 2022.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Raag Singhal
     All Counsel of Record